UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SANDRA COMPTON, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-262 (RMC) |
| ALPHA KAPPA ALPHA SORORITY INCORPORATED, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION

Two members of the Alpha Kappa Alpha Sorority and their daughters sued the Sorority, alleging that the daughters were wrongly denied entry into the AKA chapter at Howard University. Because the younger women are seniors at Howard University whose last window of opportunity to join the Sorority was rapidly closing, Plaintiffs filed a motion for a temporary restraining order and preliminary injunctive relief. Immediately prior to an evidentiary hearing on the preliminary injunction, Plaintiffs' counsel alleged that AKA had sought to tamper with and intimidate witnesses and presented official Sorority letters in support. For reasons stated on the record, the Court denied preliminary injunctive relief but directed briefing on the allegations of witness tampering. As explained below, the Court will deny the motion without prejudice.

I. FACTS

Plaintiffs filed suit on February 28, 2013, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Compl. [Dkt. 1]. Plaintiffs brought common law claims, including breach of contract, against AKA and Howard University, as well as claims for

1

violation of the D.C. Human Rights Act, D.C. Code § 2–1401.01 *et seq.*[1] Plaintiffs sought a temporary restraining order and preliminary injunction, *see* Dkts. 3 & 4, because the Sorority initiation process at Howard was scheduled to end shortly, and relief would thereafter be unavailable.  The Court heard oral argument on the motion for a TRO at a hearing on March 5, 2013, at which counsel for all parties were present.  The Court denied the motion from the bench.  *See* Minute Order dated March 5, 2013.  At Plaintiffs' request, the Court scheduled an evidentiary hearing on the motion for a preliminary injunction for March 7, 2013, at which Plaintiffs' counsel stated he expected at least one of the Sorority-member Plaintiffs—Sandra Compton or Lessie Cofield—to testify.

Before the March 7 evidentiary hearing began, however, counsel for Plaintiffs stated that he believed AKA had engaged in witness tampering, and he made an oral motion for sanctions.  Specifically, Plaintiffs' counsel asserted that AKA had sent letters to Sorority members Compton and Cofield on March 4, 2013 that immediately suspended their membership privileges and threatened permanent expulsion because they filed this lawsuit.  Plaintiffs' counsel argued that the letters intimidated the Plaintiffs, made them reticent to testify or pursue the case, and inhibited their ability to secure testimony or evidence from other Sorority members who were supportive of Plaintiffs but feared similar retaliation.  The Sorority's lawyer conceded that AKA had sent the letters but contended that AKA had done so pursuant to its internal policies requiring members to pursue administrative avenues prior to seeking judicial remedies.  The Court expressed grave concern about AKA's conduct and proceeded with the evidentiary hearing, at which Ms. Cofield testified.  For reasons stated on the record, the Court denied the

---

[1]  In a recent filing, Plaintiffs informed the Court that they withdraw Counts I, II, III, VII, VIII, and IX and that they intend to file an amended complaint.  *See* [Dkts. 18 & 19].  In the accompanying Order, the Court directs Plaintiffs to file a motion for leave to file an amended complaint.

motion for a preliminary injunction, but directed AKA to file a memorandum addressing the allegations of witness tampering and permitted Plaintiffs to file a response. *See* Second Minute Order dated March 7, 2013. AKA has filed its memorandum, *see* Dkt. 12 ("AKA Mem."), as well as a reply, *see* Dkt. 16. Plaintiffs have filed a response and surreply. *See* Dkt. 13 ("Pls. Resp."), Dkt. 14 ("Pls. Exs."), Dkt. 17 ("Surreply").

## II. LEGAL STANDARD

A United States district court has the inherent authority "to protect [its] integrity and prevent abuses of the judicial process." *See Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "The inherent power encompasses the power to sanction attorney or party misconduct . . . ." *Id.* at 1475 (citing, *inter alia*, *Chambers*, 501 U.S. at 43–45, and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980)).

The evidentiary standard governing use of a court's inherent power varies with the nature of the sanction imposed. So-called "issue-related sanctions"—those that are "fundamentally remedial rather than punitive and do not preclude a trial on the merits"—require proof by a preponderance of the evidence. *Id.* at 1478. Any "fundamentally penal" sanctions— "dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines"—require proof by clear and convincing evidence. *Id.* A court may enter the latter form of sanction "only if it finds, first, that there is clear and convincing evidence that the fraudulent or bad faith misconduct occurred, and second, that a lesser sanction 'would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits . . . provid[ing] a specific reasoned explanation for rejecting lesser sanctions.'" *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 66 (D.D.C. 2003) (quoting *Shepherd*, 62 F.3d at 1472).

"Three basic justifications . . . support the use of dismissal as a default judgment as a sanction for misconduct:" if the "errant party's behavior has severely hampered the other party's ability to present his case," if "the party's misconduct has put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay," or if the Court finds the need "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (citing *Shea v. Donohue Constr. Co.*, 795 F.2d 1071, 1074–77 (D.C. Cir. 1986)) (internal quotation marks omitted).

### III. ANALYSIS

Review of the parties' submissions confirms that the Court's initial unease upon learning Plaintiffs' allegations was justified. The letters sent to Ms. Compton and Ms. Cofield, both dated March 4, 2013 and identical except for the addressee names and addresses, stated in part:

> This is to advise you that at its meeting on March 2, 2013, the Directorate of Alpha Kappa Alpha Sorority, Inc., voted to withdraw your privileges as a member of the Sorority. This decision was based on your filing the lawsuit captioned *Compton, et al. v. AKA, et al.*, U.S. District Court for the District of Columbia, Case No. 1:13:00262.
>
> Your initiative of this suit is in violation of the Constitution and Bylaws, and in particular, the Soror Code of Conduct. . . .
>
> [T]his shall disqualify you from participating in the Sorority and all Sorority activities . . . . Violation of this sanction will result in recommendation for expulsion.

Cofield Letter, Pls. Ex. 2 [Dkt. 14-1] at 1; *accord* Compton Letter, Pls. Ex. 3 [Dkt. 14-1]. Both Plaintiffs have submitted affidavits describing the stress they experienced upon receiving the letters, but—most importantly for present purposes—Ms. Compton avers that the letter caused her to "decide[ ] not to travel to D.C. [from Atlanta] for the second round of hearings on March

4

7th because [she] felt that [her] physical presence might lead to [her] expulsion from AKA." Compton Aff., Pls. Ex. 11 [Dkt. 14-1] ¶ 5; *see also* Cofield Aff., Pls. Ex. 10 [Dkt. 14-1]. Furthermore, Ms. Cofield asserts that other AKA members who had been "empathetic to [Plaintiffs'] cause" prior to March 4 "became distant and advised that they did not want to get involved" because "they feared the same reprisal." Cofield Aff. ¶ 14. Ms. Cofield has noted one such potential witness who originally "provided valuable information" but "is now very aware and frightened by AKA's modus operandi of suspending membership privileges and levying threats of expulsion." *Id.* at ¶¶ 15–16.

AKA's response is underwhelming and misses the point. Conceding that it sent the letters, AKA seeks to justify its actions by arguing that the letters "have not substantially impacted or interfered with the orderly disposition of this case," that "there is no evidence or allegation of any attempt to defraud or to taint the integrity of evidence," and that "there is no clear and convincing evidence of bad faith by AKA, whose primary purpose was to consistently enforce well established polices [sic] and rules." AKA Mem. at 3. AKA's argument ignores the immediate impact here caused by Ms. Compton's fear of testifying. The Sorority stresses that it must "have a consistent, structured grievance process" and its "membership must be on notice that [its exhaustion policy] will be enforced and there will be consequences for violations." *Id.* at 5–6. AKA seeks to absolve itself of witness tampering by emphasizing "the need to keep the membership as a whole on notice that there are consequences to [ ] violations" of its "well-established rules." *Id.* at 6; *see also* Letter to Court from Ms. Carolyn House Stewart, Esq. ("Letter to Court"), Pls. Ex. 4 [Dkt. 14-1] at 2–3 ("The Directorate must take meaningful action that impacts a sorors' [sic] membership privileges if it hopes to survive in these increasingly litigious times.").

Of course AKA can maintain an internal grievance procedure, but once it is sued, it cannot threaten witnesses to impede their testimony. The Court finds that the actions of AKA were deplorable and inadvisable, as at least AKA's counsel now concedes, and had the impact of impeding testimony. *See* AKA Mem. at 7 ("[W]here AKA perhaps erred was in focusing only on its big-picture organizational concerns and not considering more carefully how its action could be perceived by the Plaintiffs and the Court in relation to this pending litigation."). The acknowledgement of counsel does not seem to be his client's position, since the Sorority has not retracted the threatening letters. To the contrary, it seems to misperceive the seriousness of the situation. *See* Letter to Court at 3 ("Although the Board could have imposed more severe sanctions on the plaintiffs, it chose to limit their action to the withdrawal of privileges . . . .").

Despite the wrongful, supercilious conduct of AKA, the Court finds that no sanction is appropriate at the present. The exigency underlying Plaintiffs' request for preliminary injunctive relief has past, and the Court concludes that the effects of AKA's conduct would not have altered its decision to deny such relief. Because Plaintiffs intend to amend their complaint and the Court cannot predict what course this case will take, the full impact of the letters and their continuing consequences for AKA cannot be gauged at this juncture. The Court thus denies Plaintiffs' motion without prejudice. Plaintiffs may reassert this issue later in the proceedings if they can show specific evidence or testimony was unavailable due to AKA's actions. The Court notes that AKA, likewise, can choose to address this issue preemptively as the case moves forward by retracting the letters to Ms. Compton and Ms. Cofield.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' oral motion for sanctions without prejudice. A memorializing Order accompanies this Memorandum Opinion.

DATE: April 11, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge