**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
**SANDRA COMPTION**, *et al.*,          )
                                                        )
       **Plaintiffs**,                          )
                                                        )
       v.                                              )   Civil Action No. 13-262 (RMC)
                                                        )
**ALPHA KAPPA ALPHA SORORITY,**  )
**INC.**, *et al.*,                              )
                                                        )
       **Defendants.**                         )
_____ )

**OPINION**

       Plaintiffs Sandra Compton and Lessie Cofield are members of Alpha Kappa Alpha Sorority, Inc. They and their daughters filed suit against the Sorority and Howard University, alleging that the Sorority wrongfully denied the daughters' entry into the Sorority's Alpha Chapter at Howard University. The Court dismissed the majority of Plaintiffs' claims and Howard University as a party, leaving only two counts of *ultra vires* action against the Sorority. *See* Op. [Dkt. 36]; Order [Dkt. 37]. Subsequently, the Sorority reinstated Mses. Compton and Cofield. Because full relief has been provided, this case has been rendered moot and will be dismissed.

**I.  FACTS**

       Sandra Compton and Lessie Cofield are members of Alpha Kappa Alpha Sorority, Inc. (Sorority or AKA). AKA was founded in 1908 at Howard University in Washington, D.C., and thus the Sorority's Howard Chapter is known as the "Alpha Chapter." Both Ms. Compton and Ms. Cofield dreamed for years that their daughters, Laurin Compton and Lauren Cofield, would join AKA's Alpha Chapter. The daughters entered Howard University as freshmen in the

1

fall of 2009 and were deemed AKA Legacy Candidates, *i.e.*, "the daughters, granddaughters, adopted daughters or legal wards of an active or deceased soror." *See* Opp'n [Dkt. 32], Ex. 1 (AKA Constitution & Bylaws) [Dkt. 32-3], Art. IV, § 14. Generally, Legacy Candidates receive preferential treatment over non-Legacy Candidates in the Sorority selection process. Despite their status as Legacy Candidates, the daughters were not selected as members of the Alpha Chapter.[1]

As a result, Ms. Compton, Ms. Cofield, and their daughters filed suit against the Sorority and Howard, alleging a host of claims including breach of contract and negligence. *See* Compl. [Dkt. 1]. On March 4, 2013, the Sorority withdrew Mses. Compton and Cofield's membership privileges, claiming that the filing of the lawsuit violated the Sorority's Constitution and Bylaws. Letter to Compton dated 3/4/13 [Dkt. 14-1]; Cofield Aff. [Dkt. 14-1].

Subsequently, Plaintiffs sought to file a First Amended Complaint, *see* Mot. for Leave [Dkt. 23], but the motion was held in abeyance while the parties attempted mediation. Mediation failed. The Court then denied leave to file the First Amended Complaint, but granted leave to file a Second Amended Complaint,[2] *see* 2d Am. Compl. [Dkt. 29].

---

[1] More detailed facts are set forth in the Court's Opinion, Dkt. 36.

[2] The Second Amended Complaint alleged: Count One, Lauren Cofield's breach of contract claim against AKA; Count Two, Lessie Cofield's breach of contract claim against AKA; Count Three, Lessie Cofield's ultra vires act claim against AKA; Count Four, Laurin Compton's breach of contract claim against AKA; Count Five, Sandra Compton's breach of contract claim against AKA; Count Six, Sandra Compton's ultra vires act claim against AKA; Count Seven, Sandra Compton's negligence claim against AKA; Count Eight, Lessie Cofield's negligence claim against AKA; Count Nine, Lauren Cofield's claim of tortious interference with contractual relations against Howard University; Count Ten, Laurin Compton's claim of tortious interference with contractual relations against Howard University; Count Eleven, Lessie Cofield's claim of tortious interference with contractual relations against Howard University; Count Twelve, Sandra Compton's claim of tortious interference with contractual relations against Howard University; Count Thirteen, Sandra Compton's claim of intentional infliction of emotional distress against AKA; and Count Fourteen, Lessie Cofield's claim of intentional infliction of emotional distress against AKA.

Each Defendant moved to dismiss the Second Amended Complaint in its entirety. After the motions were adjudicated, the Court dismissed most of the Second Amended Complaint and dismissed Howard University as a party; only Counts Three and Six remain.[3] These Counts allege *ultra vires* claims against the Sorority, *i.e.*, that the Sorority acted without any authority and withdrew Mses. Compton and Cofield's membership privileges in retaliation for their filing this lawsuit.[4] 2d Am. Compl. ¶¶ 74, 96. The *ultra vires* Counts seek compensatory damages and "such other and further relief deemed fair and just." *Id*. ¶¶ 75, 97. Following the Court's ruling on the motions to dismiss, the Sorority wrote to Mses. Compton and Cofield reinstating their memberships in AKA "with no break in service." *See* Letters [Dkt. 43-2]. The Sorority granted them reinstatement to "active status and in good standing." *Id*. Further, the Sorority refunded Ms. Compton a $175 fee she paid for a conference that she was unable to attend due to her membership termination.

Despite their reinstatement, Plaintiffs still seek other equitable remedies. *See* Mot. for Equitable Remedies [Dkt. 41]. The Sorority objects, insisting that the only remedy for the *ultra vires* claims is reinstatement, which has been provided. Opp'n [Dkt. 43]. Because Mses. Compton and Cofield have received all available relief, this case is moot.

## II. LEGAL STANDARD

Under the U.S. Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). That is, a court has no jurisdiction to adjudicate a matter where there is no longer a case or controversy, and a case that

---

[3] The Court denied the motion to dismiss Counts Three and Six, finding that they stated a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Op. [Dkt. 36] at 21-24.

[4] The term "*ultra vires*" refers to an act that is "beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary 1558 (8th ed. 2004).

has become moot must be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Flores v. District of Columbia*, 437 F. Supp. 2d 22, 27-28 (D.D.C. 2006); see also *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004) (a court has "an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority.")

No justiciable controversy is presented when the question sought to be adjudicated has been mooted by subsequent developments. *Associated Gen'l Contractors of Am. v. City of Columbus*, 172 F.3d 411, 419 (6th Cir. 1999). "Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' 'rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted). A case is moot if a defendant can demonstrate that two conditions have been met: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong(s) will be repeated. *Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). When both conditions are satisfied, the case is moot because neither party has a legally cognizable interest in the final determination of the underlying facts and law. *See id*.

### III. ANALYSIS

Plaintiffs brought their *ultra vires* claims under D.C. Code § 29-403.04(b)(1), which provides that "[t]he power of a nonprofit corporation to act may be challenged in a proceeding by . . . [a] member, director, or member of a designated body against the corporation to enjoin the act." The statute further provides for injunctive relief: "[a court] may enjoin or set

aside the act, if equitable." *Id*. § 29-403.04(c).[5] While the D.C. Code only references injunctive relief, the Code does not impair the Court's inherent power, as a court of equity, to order equitable relief. *See generally Brown v. Board of Education*, 349 U.S. 294, 300 (1955); *see also Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (courts possess the full range of remedial powers, legal and equitable, so long as Congress has not restricted such powers); *Wolman v. United States Selective Service Sys.*, 501 F. Supp. 310, 311 (D.C. Cir. 1980) (in the absence of a statute limiting a court's inherent power to enforce the law, a court has traditional equitable powers). In addition to reinstatement of membership that has already been granted, Plaintiffs seek restitution and attorney fees. The Court has the inherent power to grant equitable relief, but Plaintiffs have not shown that they are entitled to these remedies as a matter of law.

Restitution is a type of relief that may be awarded where a defendant has received a benefit that it is unjust for him to keep. A recipient of a benefit "has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for the recipient to retain it." *Peart v. D.C. Housing Auth.*, 972 A.2d 810, 813 (D.C. 2009). "The D.C. Circuit has defined restitution as that body of law in which (1) substantive liability is based on defendant's unjust enrichment; (2) the measure of recovery is based on defendant's gain instead of plaintiff's loss; or (3) the court restores to plaintiff his lost property or its proceeds, in kind." *United States v. Philip Morris, Inc.*, 273 F. Supp. 2d 3, 8 (D.D.C. 2002) (citing *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D. C. App. 1995)).

Plaintiffs are not entitled to restitution. They claim that they should be compensated for "loss of society" because their temporary loss of membership in AKA has

---

[5] The D.C. Code also provides that a court "may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act." *See* D.C. Code § 29-403.04(c). This portion of the Code is not material here.

5

caused them to be "national pariahs of the organization." Mot. for Equitable Remedies at 12. This allegation does not entitle Plaintiffs to restitution, as there is no assertion that the Sorority was unjustly enriched or gained as a result of Plaintiffs' loss.

Further, there is no allegation that the Sorority still holds funds that should be returned to Plaintiffs. The Sorority already returned the $175 fee that Ms. Compton paid for the AKA conference she was unable to attend during the period that her membership was terminated.

Ms. Compton alleges that she "paid $950 in 2013 to participate in AKA's Boule and related local, regional and national activities" and she seeks disgorgement of this amount from the Sorority. Mot. for Equitable Remedies at 15. She does not allege to whom, or for what, she made this payment. Because Ms. Compton provides no facts in support of her allegation that she actually paid the Sorority $950 or that the Sorority gained from the payment, she has not stated a claim against the Sorority for restitution in this amount.

Plaintiffs also seek reimbursement for monies they spent on litigation-related travel, transportation, parking, meals, and lodging. The Sorority did not benefit by these expenditures. Because the doctrine of restitution measures the remedy by the defendant's gain, there can be no restitution of these litigation expenses.[6]

Mses. Compton and Cofield further contend that they should be awarded as "restitution for witness intimidation" an amount equal to the maximum fine of $250,000 that may be imposed on a criminal defendant for witness tampering under 18 U.S.C. § 1512. Section 1512 is a criminal obstruction of justice statute for which there is no private right of action. *Peavey v. Holder*, 657 F. Supp. 2d 180, 190 (D.D.C. 2009); *see Central Bank of Denver, N.A. v.*

---

[6] Plaintiffs also seek lost wages for the time they spent litigating this case. They cite no authority for the proposition that they are entitled to lost wages.

6

*First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (refusing to infer a private right of action from a criminal prohibition alone). Plaintiffs are not entitled to a remedy under Title 18.

Plaintiffs also seek attorney fees, claiming that they have a right to fees under the common-fund doctrine. Generally, the "American Rule" applies: in U.S. courts, attorney fees are not ordinarily recoverable by a prevailing party in litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The common-fund doctrine is an exception to this rule, permitting an award of attorney fees to a person who preserves or recovers a fund or property for the benefit of others. *Passtou, Inc. v. Spring Valley Ctr.*, 501 A.2d 8, 11-12 (D.C. 1985). "The doctrine is employed to realize the broadly defined purpose of recapturing unjust enrichment." *Id*. at 12. Mses. Compton and Cofield have not, through their *ultra vires* claims against the Sorority, preserved or recovered a fund for the benefit of others. Because the common-fund exception does not apply, the responsibility for Plaintiffs' attorney fees cannot be shifted to the Sorority.

Mses. Compton and Cofield's only remaining legal claims in this lawsuit are that the Sorority acted without authority, *ultra vires*, in terminating their AKA memberships. Because the Sorority has granted them both full reinstatement with no break in service, they have been made whole. Their claims to additional remedies––restitution and attorney fees––are without legal bases, and their motion for equitable remedies will be denied.

Even though this suit presented a justiciable controversy when it was filed, Plaintiffs now have been afforded full relief and their *ultra vires* claims have become moot. Accordingly, this case must be dismissed for lack of jurisdiction. *See Clarke*, 915 F.2d at 701

(no justiciable controversy is presented when the matter at issue has been mooted by subsequent developments).

## IV. CONCLUSION

Plaintiffs' motion for equitable remedies [Dkt. 41] will be denied. Because this case is moot, it will be dismissed for lack of jurisdiction under Rule 12(b)(1). A memorializing Order accompanies this Opinion.

Date: February 18, 2015                           /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge